RALPH O. HOWARD, Landlord, *v.* FRANK RONCARELLI, Tenant, and PARAMOUNT AIR COACH AGENCY INC., Undertenant.

Municipal Court of the City of New York, Borough of Manhattan, September 25, 1950.

*Murray Simon* for landlord.

*Jacob Freed Adelman* for undertenant.

SCHWEITZER, J.   The petitioner is a long-term lessee of a building which was occupied by various tenants up to May, 1950.  During June all of these tenants moved from the building.  On or about July 7, 1950, petitioner leased the entire building to Frank Roncarelli at a rental of $2,000 per month.  On August 1, 1950, Roncarelli sublet a portion of the said premises on the street level to the undertenant Paramount Air Coach Agency Inc., at a rental of $800 a month.  All of the leases referred to herein, that is, petitioner's lease, the lease to the prime tenant Roncarelli, and the lease between Roncarelli and the undertenant, Paramount Air Coach Agency Inc., are present, valid, subsisting agreements.

The instant proceeding was commenced to recover rent in the sum of $2,000 for the month of August, 1950.  The tenant Roncarelli having defaulted, the only defense raised is that of the undertenant.  The defense is that the premises constitute

business space within the meaning of the Business Rent Law of the State of New York (L. 1945, ch. 314, as amd.) and that the rent sought by petitioner exceeds the maximum legal rent permitted by such law. Petitioner has maintained that the removal from the premises by the tenants during May, 1950, decontrolled the premises entirely by virtue of the amendment to section 12 of said law (L. 1950, ch. 326, eff. March 31, 1950). The amendment provides: "The provisions of this act also shall be inapplicable with respect to any business space now vacant or hereafter vacated by a tenant." The undertenant contends, however, that the amendment is inapplicable in the instant case, because petitioner and the undertenant's immediate landlord Roncarelli are still lessees with respect to the premises; that so long as petitioner is entitled to possession under a valid lease with the owners, the premises were not in fact vacant within the intent of the Legislature.

The determinative language of the amendment appears to be the words "vacant or hereafter vacated by a tenant." In construing the language of the statute the intent of the Legislature must be sought in the language used by it, where such language is clear and unambiguous. The rule has been stated as follows by the Court of Appeals: "Contracts or statutes are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." (*Shoonmaker* v. *Hoyt,* 148 N. Y. 425, 431.)

Examining the language of the amendment, there appears to be no ambiguity. "Vacant" means unfilled or unoccupied. Webster's Dictionary defines it as "Not occupied or put to use as land." Funk and Wagnall's New Modern Dictionary defines vacant as "unoccupied or unused, as land."

It would appear that a fair judicial interpretation of the word "vacant" as applied to the amendment is that the Legislature intended to decontrol premises which were physically unoccupied on March 31, 1950, or which thereafter became physically unoccupied. It has been in this sense that the word "vacant" as it is applied to land has been used interchangeably with "physically unoccupied". (*Bedell* v. *Edgett* 120 App. Div. 451; *Covey* v. *National Union Fire Ins. Co.,* 31 Cal. App. 579.)

The report of the New York State Temporary Commission to Study Rents and Rental Conditions (N. Y. Legis. Doc., 1950, No. 49), emphasizes this construction. The report states (pp. 9–10): "In the field of commercial and business property

there has been some improvement but it has been insufficient to justify the lifting of many restrictions notwithstanding the policy of the Commission gradually to decontrol such occupancies. An examination of the part of this report which describes the amendments recommended to the Legislature for adoption will show progress made in that direction. Most important of these recommendations will operate to decontrol all commercial and business space which is now or which will hereafter become vacant. That recommendation is consistent with the primary purpose of the emergency statutes, i.e., to guarantee to a tenant continued occupancy during the emergency brought about by the acute shortage of space and during his tenancy, to protect him against unjust, unreasonable and oppressive exactions of rent. When a tenant voluntarily vacates his loft, his office or his store the Commission believes that the State's duty to that tenant has been discharged.''

It is, therefore, clear that these premises were legally vacant, whether the party entitled to possession is owner of the fee or long-term lessor of the premises. In this connection, it is noted that the statutory definition of a landlord includes a lessor and sublessor. (Business Rent Law, § 2, subd. [d].)

In the light of the foregoing, the untenability of the argument advanced by the undertenant to the effect that the amendment was intended to apply to an owner of the fee only, as distinguished from a lessor of the premises is apparent.

Final order for the landlord, awarding possession of the premises. Rent found due to be $2,000. Five days' stay.