In the Matter of the Application of HENRY COSTE and Another, Appellants, for the Removal of STEPHEN PAPPAS and Another, Copartners Doing Business under the Assumed Name of PARISIAN RESTAURANT COMPANY, in Summary Proceedings, Respondents.

Third Department, July 1, 1932.

*Pierce & Holcombe* [*Wallace E. Pierce* and *Kenneth H. Holcombe* of counsel], for the appellants.

*Boire & Kehoe* [*Harry P. Kehoe* of counsel], for the respondents.

PER CURIAM. The tenants had a lease expiring April 1, 1933, on premises known as 103 Margaret street, city of Plattsburgh, the lease authorizing a subletting of any part or all of the leased premises during the period of the lease. The tenant sublet the first floor and

part of the basement to the respondents who thereafter conducted therein their "Parisian Restaurant." The upper floors were occupied by the tenant as a rooming house. During the pendency of the lease and sublease and on the 4th day of May, 1931, the tenant was convicted of keeping a disorderly house on the upper floors retained by him. The appellants, as owners of the property, brought this summary proceeding to dispossess the tenant and his undertenants and the sole question to be determined is the right of a landlord to remove an undertenant pursuant to section 1146 of the Penal Law and section 1410 of the Civil Practice Act.

Section 1146 of the Penal Law provides in paragraph 2 (as amd. by Laws of 1913, chap. 591): "When the lessee, proprietor, or keeper of a disorderly house * * * is convicted under this section, the lease or contract for letting the premises or the part thereof in which such violation occurred shall, at the option of the owner, agent or lessor, become void and the owner, agent or lessor may have the like remedy to recover the possession as against a tenant holding over after the expiration of his term."

Section 1410 of the Civil Practice Act (as amd. by Laws of 1921, chap. 199) provides: "In either of the following cases, a tenant or lessee * * * of real property * * * *and his* assigns, *undertenants* or legal representatives, may be removed therefrom, as prescribed in this article: * * * 5. Where the demised premises, or any part thereof, are used or occupied as a bawdy-house, or house or place of assignation for lewd persons, or for purposes of prostitution, or for any illegal trade or manufacture, or other illegal business."

Such was the law at the time the leases were executed and such has continued to be the law. The parties must be deemed to have contracted subject to the conditions prescribed in said sections. The statutory provisions became, by implication, terms and conditions of the lease and qualified the rights of the subtenant accordingly. The courts below have relied upon *Eten* v. *Luyster* (60 N. Y. 252) on the theory that a subtenant is not affected by any acts of the original tenant unless such acts constitute a breach of the lease itself. In that case, however, there was a voluntary cancellation of the lease by the tenant by agreement with the landlord. There was no breach of any condition of the hiring "or the performance of any other act entitling his landlord to re-enter and dispossess him," as the court said at page 258. It was held that it was not competent for the lessor and lessee to affect the rights of a subtenant by a voluntary surrender of the lease without the assent of the subtenant. Such is not the case here, where the tenant committed an act entitling his landlord to evict both him

and his undertenants within the implied terms of the lease, which became void if the landlord so elected.

The order of the County Court should be reversed, with costs in all courts, and an order entered delivering possession of the entire premises to the appellants.

All concur; McNamee, J., not voting.

Order reversed on the law, with costs in all courts, and order directed to be entered delivering possession of the entire premises to the appellants.